USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/12/2010

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Application granted. This Court will hold a conference
on October 12, 2010, at 5:00 p.m.*

SO ORDERED:

86 Chambers Street, 3rd floor
New York, New York 10007

~~WILLIAM H. PAULEY III U.S.D.J.~~     October 12, 2010
10 / 12 / 2010

***BY HAND***
The Honorable William H. Pauley III
United States District Judge
United States District Courthouse
500 Pearl Street, Room 2210
New York, NY 10007

RECEIVED
· · 2010
CHAMBERS OF
WILLIAM H. PAULEY
U.S.D.J.

Re: *Habitat for Horses et al. v. Salazar et al.,*
10 Civ. 7684 (WHP)

Dear Judge Pauley:

This Office represents Ken Salazar, Secretary of the U.S. Department of the
Interior ("DOI"), Robert Abbey, Director of the Bureau of Land Management ("BLM"),
and Kent Walter, Field Manager, BLM, White River Field Office (collectively, the
"Government"), in this action in which Plaintiffs bring an Administrative Procedures Act
(the "APA"), 5 U.S.C. § 701 et seq., challenge to BLM's September 10, 2010 decision to
gather and remove 138 excess horses located in Colorado, including 60 wild horses in an
area known as the North Pieance Heard Area ("Heard Area") that Plaintiffs specifically
challenge, pursuant to the Wild Free-Roaming Horses and Burros Act ("WFRHBA"), 16
U.S.C. § 1331 et seq., (the "Gather"). The Gather began yesterday, October 11, 2010.

Plaintiffs' counsel have notified me of their intention to file a request for a
temporary restraining order ("TRO") or preliminary injunction ("PI") today, asking this
Court to halt the Gather before the wild horses in the Herd Area are gathered. Because
venue is not proper in this District under 28 U.S.C. § 1391(e), and, in any event, transfer
to either the United States District Court for the District of Columbia or the District of
Colorado is proper pursuant to 28 U.S.C. § 1404(a), I am writing to request a pre-motion
conference in connection with a proposed motion to transfer venue of this action to either
of the Districts of D.C. or Colorado, prior to any hearing on a TRO or PI.

**A. Venue is Not Proper Under 28 U.S.C. § 1391(e)**

Although the complaint does not explain the basis for its conclusion that venue is
proper pursuant to 28 U.S.C. § 1391(e), see Compl. ¶ 7, Plaintiffs apparently premise
venue solely on the residency of plaintiff the American Society for the Prevention of
Cruelty to Animals ("ASPCA"), which is a New York corporation. Id. ¶ 12. Because the
ASPCA lacks standing to serve as a plaintiff in this lawsuit, its residency should not be
considered for the purposes of venue, and venue in this district is therefore improper.

"The constitutional requirements for standing are grounded in Article III of the
Constitution, which limits the jurisdiction of federal courts to cases or controversies."

Port Washington Teachers' Ass'n v. Bd. of Educ., 478 F.3d 494, 501 (2d Cir. 2007) (citing U.S. Const., Art. III, § 2, cl. 1). One of the requirements of standing – the injury in fact requirement – places the burden on a plaintiff to demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks, citations, and footnote omitted). Where a plaintiff asserts "future injury" (as it must here in order to obtain injunctive relief) standing will exist only if "the prospect of such harm [is] "'certainly impending'" and "'real and immediate.'" Lee v. Bd. of Governors of the Fed, Reserve Sys., 118 F.3d 905, 912 (2d Cir. 1997) (citations omitted). One circumstance in which a party's asserted future injury is not so "certainly impending" as to justify standing is where the party will not suffer injury unless it makes a future "choice" to subject itself to such injury. Animal League Defense Fund v. Espy, 23 F.3d 496, 500-01 (D.C. Cir. 1994) (plaintiff did not have standing where whether she suffered future injury was "wholly within her control").

According to the complaint, the only future injury to the ASPCA resulting from the Gather would be any monetary donations the ASPCA later decides to make for the wild horses that are removed in the Gather (the "Removed Horses"). See Compl. ¶¶ 13-14. That injury is not sufficient basis for standing. First, as the complaint points out, the ASPCA may decide not to donate money to the Removed Horses, in light of the need for it to "divert funds designated for its core programs" in order to do so. Compl. ¶ 13. Moreover, there is no way to know whether the 138 horses the BLM intends to remove in the Gather will actually need monetary donations from the ASPCA. Finally, ASPCA would not be compelled to donate funds to the Removed Horses, and so any "injury" it suffered as a result would be voluntary. Because the ASPCA's injury is neither "imminent" nor "certain," and it has a "choice" whether to suffer the purported injury, the ASPCA does not have standing to serve as a plaintiff in this action, see, e.g., Lujan, 504 U.S. at 560-61, Animal League Defense Fund 23 F.3d at 500-01, and pursuant to 28 U.S.C. § 1406, this action should be transferred to D.C. or Colorado.[1]

### B.   Transfer is Proper Pursuant to 28 U.S.C. § 1404(a)

This Court need not conclusively determine whether venue in this district is proper, because pursuant to 28 U.S.C. § 1404(a), transfer of this action to the District of D.C. or the District of Colorado is proper in any event. The decision whether to transfer pursuant to 28 U.S.C. § 1404(a) rests in the sound discretion of the district court and should be exercised in light of all the circumstances of a case. See, e.g., Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). Those circumstances include: (i) the convenience of the witnesses, (ii) the convenience of the parties, (iii) the locus of operative facts, (iv) the location of relevant documents and relative ease of access to sources of proof, (v) the availability of process to compel the attendance of unwilling witnesses, (vi) the forum's familiarity with the governing law; (vii) the relative financial means of the parties, (viii) the weight afforded plaintiff's choice of forum, and (ix) trial

---

[1]     Pursuant to 28 U.S.C. § 1391(e), venue would be proper in the District of D.C. because DOI and BLM are both headquartered there, see 28 U.S.C. § 1391(e)(1), or in the District of Colorado because three of the five plaintiffs reside in Colorado, see id. at § 1391(e)(3), BLM's White River Field Office is located in Colorado, the BLM's decision to implement the Gather occurred in Colorado, and the Gather is to take place entirely within Colorado, see id. at § 1391(e)(1)-(2).

efficiency and the interests of justice generally.  In re Stillwater Mining Co. Secs.
Litigation, 02 Civ. 2806 (DC), 2003 WL 21087953, at *3 (S.D.N.Y. May 12, 2003).

     Here, each of these eight factors are either neutral or weigh in favor of transfer to
D.C. or Colorado.  The first four factors weigh in favor of transfer to Colorado or D.C.
Courts in this district have described the location of witnesses to be the "most important"
factor in a Section 1404(a) analysis.  Iyalla v. TRT Holdings, Inc., 04 Civ. 8114 (NRB),
2005 WL 1765707, at *5 (S.D.N.Y. Jul. 25, 2005).  Although the Court's ultimate
holding in this APA action will be based on the administrative record, a hearing on
Plaintiffs' request for a TRO or PI would likely require the testimony of witnesses.  The
Government would intend to rely on testimony from witnesses located in Colorado and
D.C., and, as most of the Plaintiffs reside in Colorado, the same would likely be true for
Plaintiffs.  Because the BLM's decision to implement the Gather took place in Colorado,
the locus of operative facts, which courts in this District have described as another
"primary factor" in determining a motion to transfer, see id. at *6, as well as the location
of any documents related to the action also weigh in favor of transfer to Colorado.

     The fifth through seventh factors are neutral, and the eighth factor, Plaintiffs'
choice of forum, is entitled to little or no weight because Plaintiffs have instituted this
action "in a forum that has no material connection" with this action.  Id. at *6.  Indeed,
this Court should give Plaintiffs' choice of forum "no weight whatsoever," if it appears to
the Court that Plaintiffs were forum shopping when they selected this District.  Polaroid
Corp. v. Casselman, 213 F. Supp. 379, 383 (S.D.N.Y. 1962).

     The inquiry into what best serves the interests of justice is broad, and also weighs
in favor of transfer.  It can include a determination of "whether the impact of the
litigation is local to one region," Oil, Chem. & Atomic Workers Local Union Nn. 6-148
v. NLRB, 694 F.2d 1289, 1300 (D.C. Cir. 1982 (construing statute with language very
similar to Section 1404(a)), which of course weighs in favor of transfer to Colorado, and
also "includes judicial economy," Regents of the Univ. of Cal. v. Eli Lilly Co., 119 F.3d
1559, 1565 (Fed. Cir. 1997).  Judicial economy weights in favor of transfer to either
D.C. or Colorado, both of which have handled multiple challenges to previous gathers
instituted by BLM pursuant to WFRHBA — the District of D.C. within the last two
weeks.  See infra n. 2; Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 27 (D.D.C.
2002) ("judicial economy and efficiency" served where a potential transferee court has
"considerable experience" in the controversy at issue).

     Finally, the interests of justice do not require that this action remain in this
District merely because Plaintiffs have waited until the last minute to challenge the
Gather.  Although BLM's final decision to institute the Gather was published on
September 10, 2010, Plaintiffs waited to file the complaint until almost a month later, on
October 7, 2010, and have waited until after the Gather commenced to request a TRO or
PI.  These facts suggest that Plaintiffs hope to gain some tactical advantage by filing in
this District at such a late date, which this Court should not endorse,[2] particularly because
venue is not proper in this District in the first place.  See supra Part A.

---

[2]     Indeed, Plaintiffs' actions in a similar case belie any argument by Plaintiffs that they were unable
to challenge the Gather earlier.  The Cloud Foundation and Don Moore, two of the Plaintiffs in this action,
challenged the BLM's September 3, 2010 decision to commence a gather at a separate location  in

Page 4

Thank you for your consideration of this matter.

Respectfully,

PREET BHARARA
United States Attorney

By:    _AMY A. BARCELO_
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.    (212) 637-6559
Fax    (212) 637-2730

cc:    Thomas P. Battistoni, Bruce A. Wagman, Valerie J. Stanley, *counsel for Plaintiffs*

---

Colorado the District of D.C. in the case of <u>Colorado Wild Horse and Burro Coalition, Inc. et al. v. Salazar et al.</u>, Civ. No. 06-1609 (RMC) on September 28, 2010.