**BUREAU OF LAND MANAGEMENT**

**INFORMATION QUALITY GUIDELINES**

Guidelines for Ensuring and Maximizing  the Quality, Objectivity, Utility, and Integrity of Information Disseminated by the Bureau of Land Management

## 1. Overview, Scope, and Applicability

### Purpose

These guidelines describe BLM's policy and procedures for reviewing and substantiating the quality of information it disseminates.   These guidelines describe BLM's administrative mechanisms allowing affected persons to seek and obtain, where appropriate, correction of information disseminated by BLM that they believe may be in error or otherwise not comply with the law.  These guidelines are not intended to replace existing procedures for correcting or commenting on data quality but are designed to supplement them.

### Background

In December, 2000, the Congress passed the "Treasury and General Government Appropriations Act of 2001" (P.L. 106-554; H.R. 5658).  Section 515 of that act requires federal agencies to publish their "Guidelines for Ensuring and Maximizing  the Quality, Objectivity, Utility, and Integrity of Information" that they disseminate.   The Office of Management and Budget issued its guidelines for federal agencies to follow on  February, 22, 2002 (67 FR 8452).  On May 24, 2002, the Department of the Interior published its guidelines.  In response to DOI's Federal Register Notice, this document represents implementation of BLM's Information Quality Guidelines.  This document provides guidance to BLM staff and informs the public of BLM's  policies and procedures.

### Applicability

These guidelines apply to BLM sponsored information disseminated to the public with whom BLM does business.  Both the OMB and final DOI guidelines and standards are incorporated by reference in these BLM guidelines.  They are not designed to create new regulations nor impose any new legally binding requirements or obligations on BLM or the public or otherwise affect other available judicial review of BLM action.  Decisions regarding a  particular case, matter or action will be made based on applicable statutes, regulations and requirements. Interested parties are free to raise questions and objections regarding the substance of the guidelines and the appropriateness of using them in a particular situation. BLM welcomes comments on the guidelines at any time and will consider  those comments in any future revision of the guidelines.

### Definitions of what the guidelines cover

These guidelines apply to information disseminated on or after October 1, 2002.  An information product, which was disseminated by BLM prior to October 1, 2002 and maintained in our files, or in publications that BLM continues to

distribute on its website is not subject to these guidelines if the information is archival in nature.

- "Information" for purposes of these guidelines generally includes any communication or representation of knowledge such as facts or data, in any medium or form and therefore, generally includes material that BLM disseminates from a web page.

- Dissemination,  for purposes of these guidelines, includes publication either electronic or written to a community or audience that BLM initiates or sponsor.  BLM may clarify whether distributions of information are initiated or sponsored by BLM by using  disclaimers or notices to explain the status of the information.  Communication which is not directed to a community or audience (e.g., correspondence to and from an individual) is not considered ''disseminated''.

- BLM sponsored information is information prepared and distributed to support or  represent BLM's viewpoint to the general public,.  Where the BLM is relying on third party information in a manner that reasonably suggests that BLM endorses or agrees with it, BLM will notify the public of the source of the information and the basis for BLM to rely upon it.  While third party information may be challenged under the Data Quality Act, BLM's will cite the basis for relying on the data and direct those challenges to the party that collected or maintains the data.

**Types of information that are not covered by these guidelines**
Based on the DOI's guidelines, the following types of information are not specifically subject to the Data Quality Act guidelines:

1. Internet hyperlinks and other references to information disseminated by others
2. Opinions, where BLM's presentation makes it clear that what is being offered  is someone's opinion rather than fact or BLM's views.
3. Press Releases, fact sheets, press conferences or similar communications in any medium, that announce, support the announcement, or give public notice of information BLM has disseminate elsewhere
4. Public filings of information (such as public comments received by DOI in a rulemaking proceedings,) , except where DOI distributes information submitted by a third party in a manner that suggests that BLM endorses or adopts the information, or indicates in its distribution that it  is using or proposing to use the information to formulate or support a regulation, guidance, or other DOI decision or position.
5. Dissemination of  information by an agency-employed scientist, grantee, or contractor is not subject to the guidelines, namely, those situations in which they publish and communicate their research findings in the same manner as their academic colleagues,, therefore not implying agency endorsement of their views or findings
6. Testimony and Other Submissions to Congress.  Information presented or submitted to Congress, which is simultaneously

disseminated or previously disseminated to the public is exempt form these Data Quality Act guidelines.

7   Inadvertent or Unauthorized Disclosure of Information intended only for Inter-agency and/or Intra-agency Use or Communication. Documents in working form which are generated in day-to-day internal conduct of DOI and other Government business are exempt from these guidelines.

8   Correspondence with Individuals.  An exchange of information between two individuals is not considered dissemination.

9   Records Covered by Other Laws.   Responses to BLM records under the Freedom of Information Act, the Privacy Act, the Federal Advisory Committee Act, or similar laws are not included in these guidelines.

10  Archived records are exempt from the guidelines.  Information disseminated prior to October 1, 2002 but not archived and still being used in a decision making process is not exempt.

**Examples of public filings**

Examples of public filings submitted to BLM include:

1.   Submissions of information under mandates or requirements, such as filings required by statutes,  regulations, orders, permits, or licenses. This includes submissions of information by applicants for a  permit, license, approval, authorization, grant, or other benefit or permission.

2.   Information submitted voluntarily to BLM. Examples include information in submissions relating to a BLM program, process or activity, such as public comments submitted in a rulemaking; information submitted by a participant in a voluntary program; and other information voluntarily provided to BLM by third parties, such as data, studies, analyses, and other types of comments or input.

3.   Distribution intended to be limited to subpoenas or adjudicative processes: Distributions of information intended to be limited to subpoenas or adjudicative process are not covered by these guidelines. An adjudication is a matter involving specific parties that determines the rights and liabilities of the parties to the action. Adjudications have well-established procedural safeguards and rights to address the quality of adjudicatory decisions and provide  persons with an opportunity to contest decisions. This includes:
    a.  Distribution of information in documents filed in a judicial case in any court.
    b.  For enforcement purposes, distribution of information in documents developed during the conduct of any criminal or civil action or administrative enforcement action, investigation, or audit involving an agency against specific parties.

4.   Distribution of information in documents intended to be limited to any formal or informal administrative action determining the rights and liabilities of specific parties, including documents that provide the

findings, determinations or basis for such actions. Examples include the processing or adjudication of  applications for a permit, license, registration, waiver, exemption, or claim; actions to determine the liability of parties under applicable statutes and regulations; and determination and implementation of  remedies to address such liability.

If a particular distribution of information is not *initially* covered by these guidelines, the guidelines may still apply to a subsequent distribution of the information in which BLM adopts, endorses or uses the information to formulate or support a regulation, guidance, or other Agency decision or position.  For example, if BLM simply makes public a third party filing, these guidelines would not apply to that distribution of information. However, if BLM later includes the data in a background document in support of a rulemaking, these guidelines would apply to that later dissemination of the information in that document.  The BLM would need to provide its rationale and basis for relying on that data and refer the public to the source of that information.

## 2.  Ensuring and Maximizing Information Quality

**Quality defined**
BLM is issuing these guidelines to ensure and maximize the quality, including objectivity, utility and integrity, of disseminated information. Objectivity, integrity, and utility are defined here, consistent with the OMB guidelines. "Utility" refers to the usefulness of the information to the intended users. "Objectivity" focuses on whether the disseminated information is being presented in an accurate, clear, complete, and unbiased manner, and as a matter of substance, is accurate, reliable, and unbiased. "Integrity" refers to the protection of information from unauthorized access or revision, to ensure that the information is not compromised through corruption or falsification.

**Quality Guidelines for "influential" disseminated information**
BLM ensures and maximizes the quality of information by using policies and procedures appropriate to the information product. There are many tools that the BLM  uses including Quality System review, senior management oversight and controls, peer review, communications, product review, and the error correction.  The BLM uses a graded approach and uses these tools based on the intended use of the information and the resources available and, in the case of influential information, recognizes that the data should meet a higher standard of quality.
When information is defined as influential, there is an added level of scrutiny afforded this information, to include the need to ensure it is reproducible.  At BLM, influential information is that which is expected to have a genuinely clear and substantial impact at the national level major public and private policy decisions as they relate to federal public lands and resources issues.  The accuracy of this information is significant due to the critical nature of these decisions.  A clear and substantial impact, first of all, is one that has a high probability of occurring.  If it is merely arguable that an impact will occur, or if it is a close judgement call, then the impact is probably not clear and substantial.   To

4

determine that there is a clear and substantial impact, the bureau must have greater certainty than would be the case for many, ordinary, factual situations.

For the purposes of the BLM's Information Quality Guidelines, BLM will generally  consider the following classes of information to be influential, and, to the extent that they contain scientific, financial, or statistical information, that information will adhere to a higher standard of quality.  Such types of information are:  information disseminated in support of top Agency actions (i.e., substantive notices, policy documents, studies, guidance) that demand the ongoing involvement of the Director's office; information used in cross-bureau issues that have the potential to result in major cross-bureau policies, and highly controversial information that is used to advance the BLM's priorities.  The BLM may make determinations of what constitutes "influential information" beyond those classes of information where the disseminated information will have or do have a clear and substantial impact (i.e. change or effect) on important public policies or important private sector decisions.

## Transparency and Reproducibility

BLM recognizes that influential information should be subject to a high degree of  transparency about data and methods to facilitate the reproducibility of such information by qualified third parties, to an acceptable degree of precision. It is important that analytic results have a high degree of transparency regarding (1) the source of the data used, (2) the various assumptions employed, (3) the analytic methods applied, and (4) the statistical procedures employed. It is also important that the degree of rigor with which each of these factors is presented and discussed be scaled as appropriate, and that all factors be presented and discussed. In addition, if access to data and methods cannot occur due to compelling interests such as privacy, trade secrets, intellectual property, and other confidentiality protections, BLM should to the extent practicable will use commonly accepted scientific, financial, or statistical standards,  apply robustness checks to analytic results and document what checks were taken. Original and supporting data may not be subject  to the high and specific degree of transparency required of analytic results; however, BLM should apply relevant policies and procedures to achieve reproducibility to the extent practicable, given ethical, feasibility, and  confidentiality constraints.

BLM has several Bureau-wide, Program-specific policies and processes which it applies to ensure and maximize the quality of influential information. Processes of particular importance to ensure the quality, objectivity, and transparency of influential information are the Peer Review Policy, and public comment periods.  Many influential information products may be  subject to more than one of these processes.

The BLM applies the principle of using the "best available" data in making its decisions.  In applying this principle, "best available" refers to the availability of the information at the time an assessment was made weighed against the needed resources and the potential delay associated with gathering additional information in comparison to the value of the new information in terms of its potential to improve  the substance of the assessment. The BLM will rely on older information where the conditions of the land and/or resources have not substantially changed or where collection of more recent information would not be cost justified.  Where appropriate, the BLM will seek input from appropriate stakeholders and the scientific community.

5

**Quality of information from external sources**

BLM recognizes that the State and other governments and third party information issue is complex and requires more thought and collaboration with States, the scientific and technical community and other external data providers. Consultation is needed to best ascertain and address how these guidelines may apply to external sources, and to ensure the guidelines are sufficiently flexible to encourage the appropriate use of external information while also ensuring and maximizing the quality of information BLM disseminates. Therefore, BLM is taking and will continue to take steps to ensure that the quality and transparency of data and information provided by external sources is sufficient for the intended use.

For information that is either voluntarily submitted to BLM in hopes of influencing a decision or that BLM obtains for use in developing a policy or regulatory decision, BLM will disclose what it knows of the quality of this type of information and why it is being relied upon.

**Objectivity of Data**

Objectivity is defined according to two distinct elements: presence and substance. Objectivity includes whether disseminated information is being presented in an accurate, clear, complete, and unbiased manner. BLM is also committed to ensure accurate, reliable, and unbiased information. Much of the influential information BLM disseminates is and will be subject to public review and comment prior to its final publication.

The BLM operates on the principle of collecting or acquiring timely information that it judges to be the best available consistent with its mission requirements. That includes using third party data both to conserve costs and to ensure non-redundancy of the data collection process. BLM takes steps to ensure that the quality and transparency of data and information provided by external sources are sufficient for intended use but recognizes that the ultimate source of data quality in those cases is the data provider. BLM's metadata or disclaimer statement will reference third party data sources, which will describe the source of information and the who, what, when, where, why, and how of the data being documented.

**Utility of data**

It is BLM's policy that, to the extent possible, all of the information it distributes meets a basic standard of information quality and utility to the public that relies on the data. Utility of information is achieved by ensuring that the information collection guidelines adopted by the Office of Management and Budget and the Department of the Interior are adhered to and by submitting our information collection submissions to OMB for review and approval prior to using

**Data Integrity**

The integrity of the information is maintained by following the guidance provided by the National Institute of Standards & Technology (NIST) and the Department of the Interior and establishing security controls on the data to ensure that it cannot be compromised or contaminated.

**3. Pre-dissemination Review**

The information quality definitions published by OMB and the Department of the Interior provide administrative mechanisms for pre-dissemination review. Before disseminating information to members of the public, the originating office must ensure that the information is consistent with OMB and DOI guidelines and must determine that the information is of adequate quality for dissemination.  If the information is influential financial, scientific, or statistical information, then the BLM will provide a higher level of review of conclusions of the program offices and the program managers and leads are responsible for ensuring accountability for reviewing information to be disseminated to the public

## 4.  Correction of Information

**Administrative Mechanisms for Affected Persons to  Seek and Obtain Appropriate Correction of Information**

The BLM uses a variety of methods to ensure that affected persons can seek and obtain correction of information that it maintains or disseminates where it does not comply with BLM, DOI, or OMB Information Quality Guidelines. These methods include soliciting written public comments, attending public meetings, and providing opportunities to comment through BLM's web page or similar medium.  Where BLM corrects the information easily, it will do so quickly.  In most cases where the information is already published, BLM correct the information through an amendment process so that the record of decision is understood and consistent.  Where necessary, BLM may accelerate its review process taking into account the significance of the data in influencing policy.

The offices or programs sponsoring the information are the responsible parties designated by management with responsibility for the quality, objectivity, utility and integrity of the  information product or data disseminated by BLM.

**Who may request a correction of information**

Any individual or person may request a correction of information from BLM, if that individual or person is an "affected person". For the purposes of these guidelines, "affected persons" are persons who may use, be benefited by, or be harmed by the disseminated information.

**Contents of a Request for Correction of Information**

Persons requesting a correction of information should include the following information in their requests:

– An indication that the person is seeking correction of information disseminated by BLM that the person believes does not comply with BLM, DOI, or OMB Information Quality Guidelines.
– Name and contact information. Organizations submitting a complaint should identify an individual, to serve as a contact.
– A description of the information the person believes does not comply with BLM, DOI, or OMB guidelines, including specific citations, if applicable.
– An explanation of how the information does not comply with BLM, DOI,  or OMB guidelines and, if possible, a  recommendation of corrective action.

**BLM review of requests for correction of information**

BLM seeks public and stakeholder input on a wide variety of issues, including the identification and resolution of discrepancies in BLM data and information. BLM will review every request for correction under these guidelines and consider it for correction unless the request itself is deemed "frivolous," including those made in bad faith or without justification, deemed inconsequential or trivial, and for which a response would be duplicative of existing processes, unnecessary, or unduly burdensome on the Agency.

**Duplicative, unnecessary or unduly burdensome requests**

A separate process for information that is already subject to such a public comment process would be duplicative, burdensome, and disruptive to the orderly conduct of the business.  Therefore, the BLM may not consider a separate request for correction of information if it pertains to BLM actions which already provide a mechanism by which comments can be submitted.  For example, BLM rulemaking includes a comprehensive public comment process and impose a legal obligation on BLM to respond to comments on all aspects of the action. These procedures safeguard and assure a thorough response to comments on quality of information. BLM believes that the thorough consideration required by this process meets the needs of the request for correction of information process.

In the case of rulemaking and other public comment procedures, where the agency disseminate a study, analysis, or other information prior to the final agency action or information product, requests for correction will be considered prior to the final agency action or information dissemination in those cases where the agency has determined that an earlier response would not unduly delay issuance of the agency action or information and the complainant has shown a reasonable likelihood of suffering actual harm from the agency's dissemination if the agency does not resolve the complaint prior to the final agency action or information product.

If BLM cannot respond to a complaint in the response to comments for the action (for example, because the complaint is submitted too late to be considered along with other comments or because the complaint is not germane to the action), BLM will consider whether a separate response to the complaint is appropriate. BLM may consider frivolous any complaint which could have been submitted as a timely comment in the  rulemaking or other action but was submitted after the comment period.   " For the purposes of  these guidelines, "affected persons" are persons who may benefit or be harmed by the disseminated information.

**Responses to a request for correction of information**

If a request for correction of information is deemed appropriate for consideration, BLM will make a decision on the request on the basis of the information in question. If a request is approved, BLM will take corrective action. Whether  a request is approved or not, BLM will send an explanation to the requester no later than 60 calendar days after the request is filed.

**Will BLM reconsider its decision on a request for the correction of information?**

If requesters of corrective actions are dissatisfied with a BLM decision regarding their request, they may appeal the decision. These appeals for reconsideration should contain the following information:

-- An indication that the person is seeking an appeal of a BLM decision on a previously submitted request for a  correction of information, including the date of the original submission and date of BLM decision.

– An indication of how the individual or organization is an "affected person" under the Statute

– Name and contact information. Organizations submitting an appeal should identify an individual, as a contact.

– An explanation of why the appealing entity disagrees with the BLM decision, and, if possible, a  recommendation of corrective action.

– A copy of the original request for the correction of information.


**How does BLM process requests for reconsideration of BLM decisions?**

The requests for reconsideration of BLM decisions should be directed to the Chief Information Officer of the BLM, where it will be logged and tracked. These appeals will be sent to the appropriate BLM program office or region that has responsibility for the information in question. Within the responsible BLM office, an executive panel will review the appeal. This panel will be chaired by the BLM Chief Information Officer.   A further appeal of this panel's decision can be made to the BLM Director.  The responsible official, informed by the executive panel's recommendation, will  make the final decision on the appeal.  The final decision on the appeal will be made within 60 calendar days of receipt.

BLM adheres to the Department of the Interior's Data Quality Guidelines with respect to the handling of appeals of the decision of its Chief Information Officer.

**Annual Reporting**

Under the Department of the Interior Guidelines, an annual report for the previous fiscal year will be submitted to the Office of Management and Budget no later than January 1 of the following year.  BLM will submit its first report to the Department of the Interior as required under the DOI guidelines so that DOI can submit a consolidated report to OMB.   The first such submission is due to the Department in November 2003.   The report will include the  number, nature and  resolution of complaints received by BLM under the Data Quality Act provisions.