
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HABITAT FOR HORSES, a Texas non-profit corporation; AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, a New York non-profit corporation; THE CLOUD FOUNDATION, a Colorado non-profit corporation, TONI MOORE; and DR. DON MOORE,<br><br>        Plaintiffs,<br><br>    v.<br><br>KEN SALAZAR, in his official capacity as Secretary, U.S. Department of the Interior; ROBERT ABBEY, in his official capacity as Director, Bureau of Land Management; KENT WALTER, in his official capacity as Field Manager, Bureau of Land Management, White River Field Office,<br><br>        Defendants. | 10 Civ. 7684 (WHP) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT**

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for Defendants
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-6559
Facsimile: (212) 637-2730

AMY A. BARCELO
Assistant United States Attorney
  - Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.     PLAINTIFFS' CHALLENGE TO THE GATHER IS MOOT. . . . . . . . . . . . . . . . 1

    II.    PLAINTIFFS' REMAINING CLAIMS FAIL TO STATE A CLAIM. . . . . . . . . . 6

        A.    Plaintiffs' Challenge to BLM's Management of Horses
              in the NPHA Does Not State a Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    Plaintiffs' IQA Claim Fails to State a Claim. . . . . . . . . . . . . . . . . . . . . . . 9

    III.   THE GOVERNMENT IS ENTITLED TO PARTIAL
          SUMMARY JUDGMENT ON PLAINTIFFS'
          CATEGORICAL EXCLUSION CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **TABLE OF AUTHORITIES**

**CASES**

City of Houston v. Dep't of Housing and Urban Dev.,
    24 F.3d 1421 (D.C. Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Clear Channel Outdoor, Inc. v. City of New York,
    594 F.3d 94 (2d Cir. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cleveland Nat'l Air Show, Inc. v. U.S. Dep't of Transp.,
    430 F.3d 757 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cloud Found., Inc. v. Salazar,
    738 F. Supp. 2d 35 (D.D.C. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cobell v. Norton,
    391 F.3d 251 (D.C. Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Davis v. New York,
    316 F.3d 93 (2d Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Del Monte Fresh Produce Co. v. United States,
    570 F.3d 316 (D.C. Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

E.I. Dupont de Nemours & Co. v. Invista B.V.,
    473 F.3d 44 (2d Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.,
    528 U.S. 167 (2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fund for Animals v. BLM,
    460  F.3d 13 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 8

Gottlieb v. County of Orange,
    84 F.3d 511 (2d Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Handberry v. Thompson,
    92 F. Supp. 2d 244 (S.D.N.Y. Mar. 13, 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . 3

High Sierra Hikers Ass'n. v. Blackwell,
    390 F.3d 630 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Idaho Conservation League v. Mumma,
    956 F.2d 1508 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Jones v. Califano,
    576 F.2d 12 (2d Cir. 1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Liu v. Bank of America,
    08-C 2010 WL 1702537 (E.D.N.Y. Apr. 28, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lujan v. Nat'l Wildlife Fed'n,
    497 U.S. 871 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 9

Norton v. S. Utah Wilderness Alliance,
    542 U.S. 55 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.,
    733 F. Supp. 2d 1172 (E.D. Ca. Aug. 5, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Seafarers Int'l Union of N. Am. v. U.S. Coast Guard,
    736 F.2d 19 (2d Cir. 1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Sierra Club v. Peterson,
    185 F.3d 349 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Sierra Club v. Peterson,
    228 F.3d 559 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Super Tire Eng'g Co. v. McCorkle,
    416 U.S. 115 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

White River Amusement Pub, Inc. v. Town of Hartford,
    481 F.3d 163 (2d Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Whitman v. American Trucking Ass'ns, Inc.,
    531 U.S. 457 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES**

44 U.S.C. § 3516 Note, Pub. L. No. 106-554, § 1(a)(3),

Title V, § 515(a)), 114 Stat. 2763, 2763A-153, (Dec. 21, 2000). . . . . . . . . . . . . . . . . . . . . . . 10

**PRELIMINARY STATEMENT**

Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of the Government's Motion.[1]

Because BLM has completed the Gather, its actions cannot be undone, Plaintiffs' challenge to the Gather is now moot. Plaintiffs misstate the law when they argue that the Government's Motion will succeed only if it can establish that future gathers in the NPHA cannot be "reasonably expected" to occur. That test only applies when a defendant's claim of mootness is based on its own "voluntary cessation" of the challenged conduct. Because BLM did not "cease" the Gather, but rather completed it as scheduled, that standard does not apply here. Nor have Plaintiffs carried their burden to establish that the "capable of repetition yet evading review" exception to mootness applies because a fact-specific wild-horse gather is at issue.

Plaintiffs' remaining claims fail to state a claim pursuant to the APA, which does not provide a basis for this Court to perform programmatic review of BLM's management of the horses in the NPHA. Plaintiffs likewise have not stated a claim for violations of the IQA. Finally, and in the alternative, this Court should grant the Government's motion for partial summary judgment because the Government did not apply a NEPA categorical exclusion to the processing of the NPHA Horses.

**ARGUMENT**

**I.    PLAINTIFFS' CHALLENGE TO THE GATHER IS MOOT**

Plaintiffs' challenge to the Gather is moot because there is no longer any live controversy between the parties. Motion at 9-15. Indeed, Plaintiffs do not challenge any of the factual bases

---

[1] All capitalized terms have the same meaning as their definition as defined in the Government's Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint and for partial Summary Judgment dated January 28, 2011 (the "Motion").

for the Government's mootness argument, specifically, that: (1) the Gather was completed, as scheduled, on October 22, 2010, January Walter Decl. ¶ 3, and (2) on October 23, 2010, after the Gather was completed, BLM shipped the NPHA Horses to the Canon City Holding Facility, and BLM cannot now return the NPHA Horses to the range.[2]  January Ackley Decl. ¶¶ 4-7.  Based on well-settled case law, because the Gather has been completed and cannot be "undone," Plaintiffs' challenge to the Gather is now moot.  See Motion at 10.

Plaintiffs misstate the law when they argue that their challenge to the Gather would be moot only if the Government carries a "heavy burden" to demonstrate that the conduct Plaintiffs challenge "cannot reasonably be expected to start up again."  Plfs' Br. at 8.  On the contrary, that test would apply only if the Government's claim of mootness was the result of "unilateral action taken [by the Government] for the deliberate purpose of evading a possible adverse decision by this court."  E.I. Dupont de Nemours & Co. v. Invista B.V., 473 F.3d 44, 47 (2d Cir. 2006).  Each of the cases Plaintiffs cite rely on the "voluntary cessation doctrine."[3]  See Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (describing the test for when "a case has been mooted by the defendant's voluntary conduct"); Clear Channel Outdoor, Inc. v. City of New York, 594 F.3d 94, 110 (2d Cir. 2010) (same); Davis v. New York, 316 F.3d 93, 99

---

[2]      In their preliminary statement Plaintiffs claim that the Court could "restore the herd to its pre-litigation population."  Plfs' Br. at 1.  The body of their brief does not, however, argue that the Court can, or should, order the Government to do anything with the Gathered Horses.  In any event, there would be no basis for the Court to do so.  See Motion at 10.

[3]      Nor does White River Amusement Pub, Inc. v. Town of Hartford, 481 F.3d 163 (2d Cir. 2007), aid Plaintiffs.  That case did not place any "heavy burden" on the defendants, but rather held that the plaintiff's claims were not moot because the "the circumstances supporting the original claim continue[d] to be in effect."  Id. at 169.  Because the Gather is now complete and cannot be undone, the circumstances supporting Plaintiffs' original claim are not still in effect and White River's holding therefore is inapposite.

(2d Cir. 2002) (same); see also Handberry v. Thompson, 92 F. Supp. 2d 244, 247 (S.D.N.Y. Mar. 13, 2000) (same).

In this case, the Government did not "voluntarily cease" the Gather. Rather, the Government completed the Gather as scheduled after vigorously defending its decision to do so. The Government has not changed its conduct with respect to the Gather or the NPHA in any respect as a result of the instant litigation. As the EA associated with the Gather reflects, BLM's original proposal tentatively scheduled the Gather from "October 11-22, 2010," and never intended for the Gather to take place outside the time period "between October 1, 2010 and February 28, 2011." October Walter Decl. Ex. A, EA at 11. That period is now over, and the Government is therefore not "changing its position" when it represents that any further gathers in the public land of the NPHA would take place pursuant to a new draft EA. The voluntary cessation doctrine therefore does not apply.[4]

The "capable of repetition yet evading review" exception to mootness also does not save Plaintiffs' challenge to the Gather. Plaintiffs cannot meet their burden to establish the applicability of such an exception because they cannot establish a "reasonable expectation" that the parties will be involved in a "dispute over the same issues" in the face of the fact-specific nature of each separate Gather. Motion at 12-13. Indeed, Plaintiffs do not dispute that "every gather is different." Plfs' Br. at 10. See Motion 12 (citing, e.g., Fund for Animals v. BLM, 460

---

[4] Because the Government does not argue that Plaintiffs' challenge to any future removals of horses from the NPHA are moot, Plaintiffs' argument that BLM has "voluntarily ceased" its future plans with respect to the NPHA, Plfs' Br. at 10, is inapposite. In any event, the White River Field Office's current lack of funding to conduct any future gathers in NPHA's public lands, see January Walter Decl. at ¶ 4, does not constitute a "change" in the Government's position, because there is no evidence that BLM allocated—and then withdrew—funds allocated for a gather in the NPHA.

3

F.3d 13, 23 (D.C. Cir. 2006) ("[p]articular decisions to remove wild horses and burros are highly fact-specific.")).  The issues raised in any possible future gathers of wild horses from the NPHA will not crystalize until BLM has issued a preliminary EA that: (a) sets forth the basis for it decision to gather and remove any horses, January Walter Decl. ¶ 5, (b) describes whatever environmental factors BLM considered in reaching any decision to remove wild horses, and then (c) ultimately issues a final EA and DR setting forth the basis for any such decision based on the information available to BLM at that time.[5]  Motion at 13.

Plaintiffs' argument that its claims are not moot because the ASPCA could suffer future economic injury if the Government were to conduct any future gathers in the NPHA, Plfs' Br. at 12, is purely speculative.  Moreover, a Plaintiff may not take advantage of the capable-of-repetition exception to mootness by establishing that it is reasonably likely that it would suffer a similar injury if the defendant were to engage in "identical" conduct again, but rather must show that it is reasonably likely that the defendant will engage in such conduct.  Plaintiffs have not met that burden in this case.  Motion at 12-13.

Nor does Plaintiffs' challenge to BLM's so-called "policy" with respect to horses found in the NPHA based on dicta in the D.C. Circuit's opinion in Del Monte Fresh Produce Co. v.

---

[5]  The press release Plaintiffs' attach as Exhibit 7 to the Declaration of Daniel P. Weick dated March 4, 2011 ("Weick Decl.") makes it all the more clear that BLM has not yet decided whether it will "move forward with" any future gathers in the areas including the NPHA, or what factors it may rely on as the basis to conduct any such future gathers.  Weick Decl. Ex. 7. As that press release states, regardless of whether BLM eventually decides to move forward with another gather in the NPHA, it will hold a public meeting "to address issues of concern in the preparation" of any such future EA.  Weick Decl. Ex. 7.  It is therefore impossible to know whether Plaintiffs will even disagree with the basis for any future EA setting forth a proposal with respect to any future gather in the NPHA.

United States, 570 F.3d 316 (D.C. Cir. 2009), overcome the mootness of their challenge. See Plfs' Br. at 9. As an initial matter, neither the Supreme Court nor the Second Circuit has recognized any exception to mootness based on a party's "policy" challenge in an APA case, where the underlying challenge is to a discrete agency action. Indeed, such a holding would be contrary to the Supreme Court's holdings in Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871 (1990), and Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 66-67 (2004) ("SUWA"), that the APA does not provide grounds to bring claims of programmatic relief, Lujan, 542 U.S. at 891, but rather only provides a basis to challenge "discrete agency action," SUWA, 542 U.S. at 66-67; see also Fund for Animals, 460 F.3d at 22 (in a challenge to BLM's policies with respect to wild horses, "the complaining party [may only] challenge the specific implementation of the broader agency policy."); infra Part II.A; Motion at 16-20.

In any event, Plaintiffs' request for declaratory relief with respect to BLM's so-called "policy" regarding the NPHA is not ripe for review. City of Houston v. Dep't of Housing and Urban Dev., 24 F.3d 1421,1430 (D.C. Cir. 1994) ("passing references" to an agency's "alleged 'policy'" not sufficient to save plaintiff's specific challenge to agency action from mootness). Any dispute over future gathers in the NPHA are a number of "steps removed from reality" and there is therefore no "sufficient immediacy and reality" to warrant the issuance of a declaratory judgment." Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115,122-23 (1974) (citations omitted) see also Seafarers Int'l Union of N. Am. v. U.S. Coast Guard, 736 F.2d 19, 26 (2d Cir. 1984) (challenge not ripe where plaintiff did not challenge "final agency action"); see infra Part II.A. As Plaintiffs do not dispute, before any horses are removed from the NPHA in the future, the BLM White River Field Office would need to receive funding for any such gather, and would

need to prepare various documents that would be subject to public notice and comment.  See supra p. 5; Motion at 13.  Because any future gathers in the NPHA are therefore not based on a "fixed and definite" agency "policy," but are rather "contingent upon executive discretion" in considering whether to fund a future gather, Plaintiffs' purported "policy" challenge does not save their challenge to the Gather from mootness.  Super Tire, 416 U.S. at 124.

Finally, Plaintiffs are wrong to argue that it would have been "futile" for them to seek relief from this Court or the Second Circuit after this Court denied their application for a preliminary injunction on October 21, 2010.  They misstate the facts when they contend that the Government "represented" that it would permanently remove the NPHA Horses "by" October 22, 2010.  Plfs' Br. at 13.  The Government did not make any such representation.  Rather, the Government represented that the NPHA Horses would be permanently removed after the October 22 completion of the Gather, i.e., on October 23, 2010.  E.g., October Walter Decl. ¶ 3; October 20 Transcript at 63:20-25.  Any questions Plaintiffs had about the Government's plans with respect to the NPHA Horses could have been resolved by reading the October Walter Declaration or by questioning Mr. Walter during the preliminary injunction hearing, which Plaintiffs declined to do.  See October Walter Decl. ¶ 3; October 20 Transcript at 88:8.  Plaintiffs' challenge to the Gather is moot and should therefore be dismissed for lack of subject matter jurisdiction.

## II.     PLAINTIFFS' REMAINING CLAIMS FAIL TO STATE A CLAIM

### A.     Plaintiffs' Challenge to BLM's Management of Horses in the NPHA Does Not State a Claim

Plaintiffs mischaracterize the Government's Motion when they contend that it does "not argue that Plaintiffs have failed to state a claim in their challenge to efforts to zero out the NPHA herd."  Plfs. Br. at 14.  The Government moves to dismiss Plaintiffs' entire "programmatic

6

attack" on BLM's management of wild horses in the NPHA in the future, which includes all of Plaintiffs' claims other than their specific challenge to the now-moot Gather. Motion at 16-20.[6]

The Supreme Court's holding in Lujan is directly on point, and bars Plaintiffs' challenge to BLM's possible future actions with respect to horses located in the NPHA. Plaintiffs cannot distinguish Lujan by arguing that their challenge focuses on BLM's management of horses only in the NPHA rather than BLM's entire wild horses program. Plfs' Br. at 17-18. The only case Plaintiffs cite—Sierra Club v. Peterson, 185 F.3d 349 (5th Cir. 1999) (Plfs' Br. at 18)—was later reversed en banc. See Sierra Club v. Peterson, 228 F.3d 559 (5th Cir. 2000). In that en banc decision, the Fifth Circuit held that the plaintiffs' challenge to "past, ongoing, and future timber sales approved by the Forest Service" in a limited geographic area in Texas was "precisely the type of programamtic challenge that the Supreme Court struck down in Lujan," because the plaintiffs sought "wholesale improvement" of the Forest Service's management in those specific areas. Id. at 565-66 (citations and internal quotations omitted). The Peterson en banc court further explained that a "programmatic challenge [is not] made justiciable by the fact that [plaintiffs] identified some specific [actions] in their pleadings that they argue are final agency actions." Id. at 567. Accordingly, Plaintiffs' (now moot) challenge to the Gather and any other previous decisions by BLM to remove horses from the NPHA also do not provide a basis for

---

[6] Plaintiffs are also incorrect to rely on cases involving an exception to the mootness doctrine to argue that they have stated a claim a claim. Plfs' Br. at 15 (citing Cleveland Nat'l Air Show, Inc. v. U.S. Dep't of Transp., 430 F.3d 757, 761 (6th Cir. 2005), which declined to dismiss plaintiffs claims because they fell within the "capable of repetition yet evading review" exception to mootness, and Cloud Found., Inc. v. Salazar, 738 F. Supp. 2d 35, 39 (D.D.C. 2010), which did the same). That a challenge to a specific agency action may fall within the capable-of-repetition exception to mootness (which is a question of subject matter jurisdiction) does not mean that the plaintiff has stated a "pattern and practice" claim under the APA (which is a question of failure to state a claim).

Plaintiffs launch a programmatic attack on BLM's management of the NPHA.

Plaintiffs' remaining citations are inapposite, as in those cases—unlike here—the plaintiffs actually did challenge a specific final agency action. Idaho Conservation League v. Mumma, 956 F.2d 1508, 1510, 1519 (9th Cir. 1992) (challenge to "clear and final decision by the Forest Service "to recommend against wilderness designation [in] 43 of . . . 47 roadless areas") (citations omitted); High Sierra Hikers Ass'n. v. Blackwell, 390 F.3d 630, 639 (9th Cir. 2004) (challenge to "certain agency actions" including "the grant of certain special-use permits[] and the calculation of certain trailhead limits").[7]

Indeed, as case law in the BLM wild horse gathers context demonstrates, the only reviewable "final agency action" in a wild horse gather is a final decision record and EA setting forth the bases for BLM's final decision to remove horses. See, e.g., Fund for Animals, 460 F.3d at 18. The test for "finality" of agency action as described in Whitman v. American Trucking Ass'ns, Inc., 531 U.S. 457 (2001), is consistent with that rule, because it holds that agency action is only "final" when the agency has "rendered its last word on the matter in question,'" and consummat[ed]" its "decisionmaking process."[8] Whitman, 531 U.S. at 478 (citations and internal quotations omitted). In a wild horse gather, BLM does not render its "last word" until it issues a final decision record announcing a gather.

---

[7] Nor is this a case in which Plaintiffs can show agency "breach[] [of] fiduciary duties." Cobell v. Norton, 391 F.3d 251, 257-58 (D.C. Cir. 2004). Accordingly, the regular APA standards apply.

[8] Jones v. Califano, 576 F.2d 12 (2d Cir. 1978), is not applicable because it does not analyze the APA's stringent finality requirements. In any event, to the extent that Jones is inconsistent with the Supreme Court's later decisions in SUWA and Lujan, it is overruled by those later Supreme Court decisions.

Plaintiffs are incorrect to argue that the Supreme Court's holding in SUWA does not apply here because "[t]his action does not seek to force any particular action by BLM."  Plfs' Br. at 19.  Assuming, based on that statement, that Plaintiffs intend to withdraw their claims alleging that the Government has "unlawfully withheld or unreasonably delayed" action in violation of the various federal laws pursuant to which it brings claims, Compl. ¶¶ 86, 94, 98, 103, the Supreme Court's opinion in SUWA is nevertheless instructive here.  As the case law Plaintiffs cite explains, SUWA's holding that the APA only provides a basis for a plaintiff to challenge "discrete agency action" applies to any action under the APA, regardless of whether the plaintiff challenges the agency's affirmative action or its failure to take action.  Pub. Lands for the People, Inc. v. U.S. Dep't of Agric., 733 F. Supp. 2d 1172, 1183 (E.D. Ca. Aug. 5, 2010) ("[O]nly 'discrete agency action' may be reviewed under the APA") (citations omitted); see also SUWA, 542 U.S. at 64 ("The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in [Lujan]").  For these reasons, this Court should dismiss Plaintiffs' request for programmatic review of BLM's management of horses in the NPHA.

**B.     Plaintiffs' IQA Claim Fails to State a Claim**

Plaintiffs' IQA-related claims, whether they are brought directly under the IQA or are instead brought under the APA, should be dismissed as moot, and for failure to state a claim.  See Motion at 9-22; supra Parts I, II.A.  Moreover, the IQA does not regulate the process an agency must follow in determining what types of information it may consider in reaching its decisions, which is what Plaintiffs challenge here.  Motion at 20-22.  Rather, the IQA requires that BLM do only three things: (1) "issue guidelines" regarding information, (2) "establish administrative mechanisms" through which the public may obtain correction of such information;

9

and (3) "report periodically" to the Director of the Office of Management and Budget. 44 U.S.C. § 3516 Note, Pub. L. No. 106-554, § 1(a)(3) (Title V, § 515(a)), 114 Stat. 2763, 2763A-153, (Dec. 21, 2000). The complaint does not allege that BLM has failed to do any of these things, and Plaintiffs' purported IQA claim thus fails to state a claim. See Motion 20-22.

### III. THE GOVERNMENT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CATEGORICAL EXCLUSION CLAIM

No subject matter jurisdiction exists over Plaintiffs' challenge to the invocation of any NEPA "categorical exclusion" in connection with the Gather, because Plaintiffs' challenge to the Gather is moot and its pattern and practice claim fails to state a claim. Motion 9-24. Even if Plaintiffs' challenge were not moot, however, this Court should grant the Government's properly supported motion for partial summary judgment because BLM did not apply a categorical exclusion to the processing of the NPHA Horses. January Ackley Decl. ¶ 8.

Plaintiffs' unspecific challenges to the accuracy of Mr. Ackley's declaration, coupled with their concession that BLM's NEPA Handbook would have permitted BLM to apply a categorical exclusion to the processing of the NPHA Horses in the "circumstances at issue here," Plfs' Br. at 23, are not sufficient to create a genuine issue of material fact regarding whether BLM applied a categorical exclusion when it processed the NPHA Horses in the Gather.[9] Plaintiffs arguments are no more than speculation and general "assertions that affidavits supporting [the Government's] motion are not credible," which are not sufficient to defeat a

---

[9] Furthermore, Local Civil Rule 56.1 requires that the party "opposing a motion for summary judgment" must file its own statement "responding to each numbered paragraph in [56.1] statement of the moving party." Because Plaintiffs did not file such a statement "specifically controvert[ing]" that BLM did not apply a categorical exclusion to the Gather, Plaintiffs have "admitted" that fact for purposes of the instant Motion. Id. at 56.1(c). Liu v. Bank of America, 08-CV-3358 (JG), 2010 WL 1702537, at *1 n.1 (E.D.N.Y. Apr. 28, 2010).

properly supported motion for summary judgment.  Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted).

Because the undisputed record reflects that BLM did not apply a categorical exclusion in connection with the Gather, no other documents in BLM's possession provide "evidence" regarding the application of such an exclusion to the Gather.  Plfs' Br. at 24.  Indeed, as Plaintiffs do not dispute, the EA for the Gather does not suggest that BLM applied a categorical exclusion to the processing of the NPHA Horses.  October Walter Decl. Ex. A, EA at 26-32.  Rather, BLM adequately disclosed the impacts of the processing and holding of the NPHA Horses.  Motion at 23-24; October Walter Decl. Ex. A, EA at 26-32.  Thus, there is no basis to require production of additional documents.

## CONCLUSION

The Court should dismiss Plaintiffs' challenge to the Gather for lack of subject matter jurisdiction, dismiss Plaintiffs' purported challenge to BLM's management of horses from the NPHA. and IQA claim for failure to state a claim, and, in the alternative, grant part summary judgment in favor of the Government on Plaintiffs' categorical exclusion claim.

Dated: New York, New York
       March 17, 2011

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney
                                        Southern District of New York

                                          */s/ Amy A. Barcelo*
                                 By: AMY A. BARCELO
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Tel.: (212) 637-6559/Fax x2730